UNITED STATES of America, Plaintiff

v.

WESTVACO CORPORATION,
Defendant

Civil Action No. MJG–00–2602.

United States District Court,
D. Maryland.

April 23, 2001.

P. Michael Cunningham, Office of US Attorney, Baltimore, MD, William A.

Hutchins, U.S. Dept. of Justice, Environmental and Natural Res. Div., Environmental Enforcement Section, Washington, DC, Lois J. Schiffer, U.S. Dept. of Justice, Natural Resource Division, Washington, DC, Lynne A. Battaglia, U.S. Attorneys Office, Baltimore, MD, for plaintiff.

Mark B. Bierbower, Hunton and Williams, Washington, DC, Raymond B. Ludwiszewski, Gibson Dunn et al, Washington, DC, Richard L. Schmalz, Westvaco Corporation, New York City, for defendant.

Douglas Winston, Cresaptown, MD, pro se.

## MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Defendant Westvaco Corporation's Motion for Dismissal of Counts I, II, and VII and Partial Dismissal of Counts III and IV. The Court finds a hearing unnecessary to resolve this motion.

## I. BACKGROUND

### A. The Statutory Framework

The Clean Air Act (the "Act") establishes a regulatory scheme designed "to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Act requires the Administrator of the Environmental Protection Agency ("EPA") to promulgate regulations establishing national ambient air quality standards for certain criteria air pollutants. Id. § 7409. The Act also requires each state to determine if the areas within its jurisdiction attain the national standards ("attainment areas"), fail to attain the standards ("nonattainment areas"), or are unclassifiable as either attainment or nonattainment areas ("unclas-

sifiable areas"). Each state must then adopt and submit to the EPA for approval a State Implementation Plan ("SIP") to ensure that the attainment areas will continue to maintain the national standards, and that the nonattainment areas will eventually attain the standards. Id. § 7410. Each SIP, once approved, is enforceable by the EPA. Id. § 7413(a)(1).

The statutory provisions and state and federal regulations most pertinent to the pending motion are summarized below.

### 1. Prevention of Significant Deterioration ("PSD")

The Act sets forth specific permitting requirements, often referred to as the "PSD program," for construction of or modifications to major stationary sources that will cause significant increases in air pollution in attainment and unclassifiable areas. Maryland's SIP prohibits the construction, modification, or operation of a new or modified source which violates any provision of the federal PSD regulations. COMAR 26.11.06.14.

### 2. Minor New Source Review

The Maryland SIP provides that no person may modify any installation capable of generating, causing, or reducing emissions of pollutants to the ambient air without first obtaining a permit for such modification from the Maryland Department of the Environment. COMAR 26.11.02.03(A)(6).

### 3. New Source Performance Standards

The Act requires the EPA to establish performance standards for certain categories of new stationary sources of air pollution. 42 U.S.C. § 7411. The EPA has established such standards for kraft pulp mills, which apply to specified facilities ("affected facilities"), including brown stock washer systems that have been constructed or modified after September 24, 1976. 40 C.F.R. § 60.14. The standards impose a series of requirements for each

affected facility which include initial and periodic performance testing of the rates and monitoring of emissions. *Id.* §§ 60.7, 60.8, 60.283, 60.284.

### B. *Factual Summary* [1]

Westvaco owns and operates a kraft pulp and paper mill in Luke, Maryland ("the Luke Mill") with ancillary facilities in Beryl, West Virginia. The Luke Mill processes wood into pulp and then further processes the pulp into various grades of paper. The Luke Mill is located in an attainment area for sulfur dioxide, nitrogen oxides, and particulate matter. According to the Amended Complaint, the Luke Mill has been a stationary source of air pollution over the past twenty years. The pollution which it emits has a negative affect on the environment as well as on the health of human beings.

Between 1981 and 1991, Westvaco allegedly instituted four sets of projects at the Luke Mill: (1) the digester expansion program (from 1981 to 1985); (2) the mill-wide expansion program (from 1986 to 1991); (3) modification to the brown stock washer system (1998); and (4) changes to various boilers and the brown stock washer system (no dates pleaded).

### C. *Procedural History*

On April 19, 1999, the EPA issued a Notice of Violation, pursuant to 42 U.S.C. § 7413(a), for Westvaco's alleged violations of the Act and the Maryland and West Virginia SIPs. On August 28, 2000, the Government commenced this civil action in the District of Maryland, seeking civil penalties and injunctive relief. The Amended Complaint alleges, *inter alia,* that each of the four projects undertaken at the Luke Mill was a "modification" subject to preconstruction review under the Act, and

that Westvaco violated the Act by failing to obtain required permits.

The Government claims:

| | |
|---|---|
| Count I | Failure to obtain preconstruction permits—digester expansion program |
| Count II | Failure to obtain preconstruction permits—mill-wide expansion program |
| Count III | Violation of new source performance standards—brown stock washer system |
| Count IV | Failure to obtain permits—various modifications relating to emissions to the air |
| Count V | Maryland particulate SIP violation |
| Count VI | West Virginia particulate SIP violation |
| Count VII | Failure to obtain permits for major modifications relating to nitrogen oxide emissions |

By the subject motion, Westvaco seeks dismissal of all of Counts I, II, and VII and partial dismissal of Counts III and IV. Essentially, Westvaco asserts that the claims at issue are barred by virtue of the expiration of limitations.

## II. *LEGAL STANDARD*

It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, the plaintiff is not required to "set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99.

"When it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a 12(b)(6) motion to

---

**1.** The facts are stated as alleged by the Government.

dismiss." *Papesh v. American Nat'l Can Co.,* 177 F.R.D. 344, 345 (D.Md.1997) (citing *R.W. Murray Co. v. Shatterproof Glass Corp.,* 697 F.2d 818, 821 (8th Cir.1983)). In evaluating a motion to dismiss under Rule 12(b), the court must accept the well-pled allegations of the complaint as true, and construe all facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). The court need not, however, accept conclusions of law or unwarranted deductions of fact. *Mylan Lab., Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1059 (D.Md.1991).

III. *DISCUSSION*

█ The Act specifies no period during which claims thereunder may be brought. Therefore, the general federal statute of limitations is applicable. *E.g., United States v. SCM Corp.,* 667 F.Supp. 1110, 1123 (D.Md.1987). The general statute of limitations for civil enforcement actions provides:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued ....

28 U.S.C. § 2462. A claim "first accrues" under § 2462 on the date that a violation first occurs. *E.g., 3M Co. v. Browner,* 17 F.3d 1453, 1462 (D.C.Cir.1994) ("[T]he term 'accrued' in § 2462 has been taken to mean that the running of the limitations period in penalty actions is measured from the date of the violation.").

█ Where a violation is "continuing," however, a claim is not barred by the statute of limitations so long as it continues to accrue within the limitations period. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) ("Statutes of limitations ... are intended to keep stale claims out of the courts. Where the challenged violation is a continuing one, the staleness disappears."). " 'A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.' " *National Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1166 (4th Cir. 1991) (quoting *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981)). With respect to statutory or regulatory challenges, the Fourth Circuit has "previously found a continuing violation where regulations continued to be applied to persons within a statutory limitations period. Yet ... [it has] found no continuing violation where any harm to the plaintiff stemmed only from the initial application of regulatory prohibition." *Id.* at 1167 (citations omitted).

The Government filed the present lawsuit on August 28, 2000. Westvaco argues that the Government is barred by the statute of limitations from bringing claims for alleged violations occurring prior to August 28, 1995. In response, the Government contends that the alleged violations are "continuing" and therefore fall within the five-year statute of limitations period.

The Government's claims can be grouped into three distinct categories: (1) claims alleging that Westvaco failed to obtain a permit to construct and fulfill other preconstruction requirements prior to modifying an emissions source ("preconstruction permit claims"); (2) claims alleging that Westvaco failed to conduct certain tests on modified emissions sources ("initial performance test claims"); and (3) claims alleging that Westvaco failed to complete certain actions that must be done at specified intervals, such as calculating emissions every twelve hours or filing semi-annual reports ("periodic activities claims").

As discussed below, Westvaco is entitled to dismissal of all the Government's claims for civil penalties in Counts I, II, and VII, and some of the Government's claims for civil penalties in Counts III and IV.

### A. Preconstruction Permits (Counts I, II, IV, and VII)

The Amended Complaint asserts four preconstruction permit claims. In Counts I and II, the Government alleges that the digester expansion program and the mill-wide expansion program violated the Act's PSD Program, which prohibits the construction of a major emitting facility without a permit. The Government claims in Count IV that Westvaco violated COMAR 26.11.02, a Maryland minor new source regulation, when it allegedly failed to seek or obtain a construction permit from the State before making certain changes to the brown stock washer system and various boilers. Finally, in Count VII, the Government asserts that Westvaco violated 42 U.S.C. §§ 7502 and 7503 by allegedly failing to obtain a permit prior to commencing the digester expansion program and the mill-wide expansion program.

▆▆▆ Federal district courts have uniformly held that preconstruction permit violations occur only at the time of the construction or modification of the emitting facility. E.g., United States v. Bro-

tech Corp., No. Civ.A. 00–2428, 2000 WL 1368023, at *3 (E.D.Penn. Sept. 19, 2000) ("Violations of the various requirements to obtain construction permits or plan approvals occur at the time of the construction, modification, or installation of the equipment or facility."); United States v. Campbell Soup Co., Nov. CIV. S–95–1854 DFL, 1997 WL 258894, at *1–2 (E.D.Ca. Mar.11, 1997) ("But even if the underlying intent behind the [California SIP] regulation is to assure continuing air quality, the regulation cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine still exists or is operated."); Ogden Projects, Inc. v. New Morgan Landfill Co., 911 F.Supp. 863, 876 (E.D.Pa.1996) ("We agree that a violation of the Part D permitting requirement occurs at the time of construction as the statute requires a preconstruction permit."); United States v. Louisiana–Pac. Corp., 682 F.Supp. 1122, 1130 (D.Colo. 1987) ("The context of these regulations makes clear that the violation occurs when the actual construction is commenced, and not at some later point in time."). The Government, therefore, is barred under § 2462 from pursuing civil penalties for claims alleging a failure to obtain required preconstruction permits more than five years before the lawsuit was filed.[2]

2. The five-year statute of limitations applies to claims for civil penalties only. E.g., United States v. Campbell Soup Co., Nov. CIV. S–95–1854 DFL, 1997 WL 258894, at *3 (E.D.Cal. Mar.11, 1997) ("Section 2462 sets a five year time limit for penalty actions only .... the court finds that the government may seek equitable relief beyond the five year statute of limitations for penalty actions."). Accordingly, it would be improper to dismiss the Government's claims for injunctive relief at this time. However, as the Campbell Soup court explained:

[T]he lapse of time will surely be relevant to the court's decision whether or not to grant

any injunctive or other equitable relief. On the current state of the record, it seems unlikely that the government could show that the violation of the preconstruction permit rule, if any, has any effect separate and apart from the operation of the machines. Thus, if the machines are now properly operated, under a valid permit and in conformity with the SIP, it is unlikely that any injunctive relief would issue because some seven years ago the machines were constructed without a permit.

Id. Because these issues raise questions of fact, the Government will be allowed to proceed with its claims for injunctive relief

The Government contends that Westvaco's alleged failure to obtain required preconstruction permits is a continuing violation for statute of limitations purposes. The Government, in essence, argues that each day of operation at the Luke Mill constitutes a continuing violation of Westvaco's alleged failure to obtain the required preconstruction permits for each modification. This theory was addressed by the court in *United States v. Brotech Corp.* In *Brotech,* the court rejected the Government's contention that failure to obtain certain construction permits and plan approvals pursuant to the Pennsylvania SIP were continuous stating, in particular, that there was a significant distinction between a failure to obtain preconstruction permits and plan approvals and failure to obtain *operating* permits. *See* 2000 WL 1368023, at *3. The latter violation would be continuing since every day of operation without an operating permit is another violation. In contrast, a violation for failure to obtain a construction permit does not continue once the unpermitted construction is completed.

In sum, this Court follows the rationale of *Brotech* and holds that the statute of limitations bars the Government from bringing claims based on preconstruction permit violations where the construction was completed more than five years prior the commencement of the lawsuit.

### 1. *PSD claims (Counts I and II)*

The PSD claims in Count I and II shall be dismissed because, as a discussed above, these do not allege continuing violations in regard to the general federal statute of limitations. It should, in addition, be noted that 42 U.S.C. § 7475(a), the Act's PSD Program, specifically indicates that violations of that provision occur at the time construction is commenced, and not at some later point in time.

Section 7475(a), entitled "Preconstruction requirements," states that "[n]o major emitting facility on which construction is commenced after August 7, 1977, *may be constructed* in any area to which this part applies unless [a permit meeting certain criteria has been issued]."[3] 42 U.S.C. § 7475(a) (emphasis added). Section 7475(a), therefore, clearly and unambiguously applies to the *construction*—not the *operation*—of major stationary sources. This interpretation is further supported by 42 U.S.C. § 7477, the PSD Program's enforcement provision, which mandates the EPA to "take such measures, including issuance of an order, or seeking injunctive relief, as necessary *to prevent construction or modification of a major emitting facility* which does not conform to the require-

against Westvaco, as it was so permitted against the defendant in *Campbell Soup. See also U.S. v. American Elec. Power Service Corp.,* Nos. C2–99–1182, C2–99–1250, slip op. at 6 (Mar. 28, 2001) *and United States v. IBP, Inc.,* No. 8:00CV28, slip op. at 6–7 (Mar. 23, 2001) (dismissing preconstruction permit claims under the Clean Air Act for civil penalties which accrued beyond the five-year statute of limitations period, but denying dismissal of the Government's identical claims for injunctive relief).

**3.** The Government argues that many of these criteria create ongoing obligations, thus rendering any violation of § 7475(a) continuing.

For example, § 7475(a)(a)(3) requires that the facility's owner "demonstrate[] ... that emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of [certain specified standards]." 42 U.S.C. § 7475(a)(a)(3). However, this requirement, along with all of the requirements enumerated in § 7475(a), must be undertaken *prior to* the construction or modification of the facility. Thus, when read in context, none of the prerequisites for obtaining a permit under § 7475(a) creates an ongoing violation. As such, violations of that provision accrue at the time of construction (or modification) but are not continuing.

ments of [the PSD Program]." *Id.* § 7477 (emphasis added).

According to Counts I and II of the Amended Complaint, Westvaco allegedly violated state and federal PSD regulations by failing to obtain preconstruction permits for the digester and mill-wide expansion programs. These projects, according to the Government, were commenced in 1981 and 1986 respectively—more than fourteen years before the Government filed the present lawsuit. Because the alleged violations occurred outside of the five-year statute of limitations period, the government is barred from bringing these claims for civil penalties. Westvaco's motion to dismiss Counts I and II (to the extent that the claims asserted therein seek civil penalties) is therefore granted.[4]

### 2. *Minor new source claims (Count IV)*

[5] The Government claims in Count IV that Westvaco violated COMAR 26.11.02, a Maryland minor new source regulation, when it allegedly failed to seek or obtain construction permits from the State before making certain changes to the brown stock washer system and various boilers at the Luke Mill. The six modifications at issue in Count IV are: (1) automation of the controls of two brown stock washer systems (1998); (2) installation of sootblowers in the No. 24 power boiler (1991); (3) installation of sootblowers in No. 3 recovery boiler (1991); (4) replacement of 32 sootblowers in the No. 2 recovery boiler (1989); (5) rebuild of the mechanical dust collector used to control particulate emissions from the No. 25 power boiler (no date provided); and (6) installation of new conveyor to transport coal to the power boilers (1986). Four of these alleged violations took place prior to 1995 and cannot be the bases of a claim. Accordingly, Westvaco is entitled to dismissal all of claims in Count IV except for the violation alleged to have occurred in 1998 and, at least until the date is specified, the violation as to which no date was pleaded.

### 3. *Section 7502 and 7503 claims (Count VII)*

In Count VII the Government alleges that because the Luke Mill is located in the Northeast Ozone Transport Region, Westvaco violated the requirement that it obtain permits for major modifications in nonattainment areas pursuant to 42 U.S.C. §§ 7502 and 7503. The Government concedes dismissal of this claim with respect to its prayer for civil penalties. It may maintain the claim, however, to the extent that it may be entitled to injunctive relief. *See* the discussion, *supra,* note 3. Accordingly, the claim for civil damages in Count VII should be dismissed; the claim for equitable relief remains pending.

### B. *Initial Performance Test and Periodic Activities Claims (Count III)*

In Count III of the Amended Complaint the Government alleges that Westvaco violated new source performance standards promulgated under the Act when it modi-

---

4. The Government also argues, to no avail, that the Maryland SIP expands the federal preconstruction permitting requirements to apply to the operation as well as the construction and modification of major stationary sources. The pertinent Maryland regulation provides that "[a] person may not construct, modify, or operate or cause to be constructed, modified, or operated a source ... which will result in violation of any provision of [the federal PSD regulations]." COMAR 26.11.06.14. This regulation, however, merely incorporates by reference the federal PSD regulations. *See* 8 Md. Reg. 356 (Feb. 20, 1981) ("The substance of the State [PSD] program ... is merely an adoption of the Federal substantive requirements."). The Government's argument that the Maryland SIP is broader than the federal PSD Program therefore lacks merit.

fied the brown stock washer system (an "affected facility") at the Luke Mill in 1988.

### 1. *Initial performance test claim*

Count III specifically alleges, *inter alia,* that Westvaco failed to conduct a required initial performance test to measure emissions of total reduced sulfur from the modified brown stock washer system. *See* 40 C.F.R. § 60.8(a). According to the regulations, the test is to be performed "not later than 180 days after initial startup of such facility." *Id.* Because the Amended Complaint alleges that the brown stock washer system was modified in 1988, twelve years before the Government commenced this civil action, Westvaco's alleged violation of the regulation occurred well beyond the five-year statute of limitations period. The Government, in its opposition to Westvaco's motion for partial dismissal of Count III, does not contend otherwise. Accordingly, the claim must be dismissed.

### 2. *Periodic activities claims*

In Count III the Government alleges that after Westvaco modified the brown stock washer system in 1988, Westvaco failed to comply with certain periodic requirements for affected facilities. Specifically, the Government claims that Westvaco failed to meet certain emission standards, 40 C.F.R. § 60.283, install and operate a continuous emission monitor, *Id.* § 60.284, calculate and record emission levels twice daily, *Id.,* and submit semi-annual reports of emission to the EPA, *Id.* § 60.7. Westvaco requests dismissal of any or all of these claims to the extent that they allege liability for acts prior to August 28, 1995.[5]

█ The Government, in its opposition to Westvaco's motion, does not address Westvaco's request. Rather, the Government merely reiterates that "Westvaco has failed and continues to this day to fail, to comply with any of these requirements. Because these violations are of on going [sic] requirements, they are continuing and Westvaco's motion to dismiss Count III should be denied." Opp. Mem. at 30. Nevertheless, Westvaco is entitled to dismissal of the Government's claims only when it appears from the face of the complaint "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Because the Government has failed to allege any specific dates for the periodic activities claims enumerated in Count III, those claims cannot now be dismissed.

## V. *CONCLUSION*

For the foregoing reasons:

1. The Motion for Dismissal of Counts I, II, and VII and Partial Dismissal of Counts III and IV submitted by Defendant Westvaco Corporation is GRANTED IN PART and DENIED IN PART.

a. All claims for civil penalties in Count I and II are dismissed.

b. The Count III claim for civil penalties pertaining to the 1988 modification is dismissed.

c. The Count IV claims for civil penalties for actions specified in paragraph 90(b), (c), (d), and (f) of the Amended Complaint are dismissed.

d. All claims for civil penalties in Count VII are dismissed.

2. Defendant shall file its Answer to the Amended Complaint by May 8, 2001.

---

5. Westvaco argues that if, for example, it was required to submit a report in 1989 and failed to do so, that claim should be dismissed because it is barred by the statute of limitations.