UNITED STATES of America,
Plaintiff,

v.

ILLINOIS POWER COMPANY and
Dynegy Midwest Generation,
Inc., Defendants.

No. 99–CV–0833–MJR.

United States District Court,
S.D. Illinois.

Feb. 19, 2003.

William E. Coonan, Assist. U.S. Atty., Fairview Heights, IL, Pamela R. Lee, Nicole Veilleux, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Paul R. Stokstad, U.S. Dept. of Justice, Environment Enforcement Section, Washington, DC, for plaintiff.

Harry B. Wilson, Jr., Husch & Eppenberger, St. louis, MO, Stephen J. Boneb-

rake, Thomas P. Luning, Mary A. Mullin, Sheldon A. Zabel, Schiff, Hardin et al., Chicago, IL, Paul E. Gutermann, Daniel Joseph, Parry M. Rosen, Akin, Gump, et al., Washington, DC, James W. Ingram, Dynegy Legal Dept., Houston, TX, for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

REAGAN, District Judge.

## I. INTRODUCTION

In its latest complaint, the United States of America ("the Government") brings suit against Defendants, Illinois Power Company ("Illinois Power") and Dynegy Midwest Generation, Inc. ("Dynegy") pursuant to the Clean Air Act, 42 U.S.C. § 7401–7671q ("the Act"), for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470–92, the New Source Performance Standards ("NSPS") of the Act, 42 U.S.C. § 7411, and the federally approved and enforceable Illinois State Implementation Plan ("Illinois SIP").

In general, the Government alleges that Illinois Power modified three electric generating units at the Baldwin Power Station coal-fired electricity generating power plant in Randolph County, Illinois which was operated by Illinois Power and then later by Dynegy without obtaining appropriate permits and without installing the best available control technology to control emissions of nitrogen oxides, sulfur dioxide, and particulate matter as the Clean Air Act, applicable federal regulations, and the Illinois SIP require.

Specifically, the Government makes three claims for relief. First, the Government alleges that nine construction projects undertaken between 1982 and 1994 were done without obtaining a construction permit and were operated thereafter without an operating permit. Second, the Government alleges that two of the nine construction projects were done without notifying the United States Environmental Protection Agency ("EPA") of the projects before they began, without conducting a performance test within the regulatory time period, without informing the EPA of the test results, and without ensuring that the modifications complied with the NSPS emissions requirements. Third, the Government alleges that the nine construction projects were done without state construction permits and were thereafter operated without operating permits in violation of Illinois' federally enforceable State Implementation Plan.

Now before the Court is Illinois Power and Dynegy's Joint Motion for Partial Summary Judgment (Doc. 338) on the Government's first and third claims for relief, as well as a portion of the second claim.

## II. STANDARD OF REVIEW

As the United States Supreme Court as stated, summary judgment is not a procedural shortcut disfavored under the law, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir.1990), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir.1996), *cert. denied*, 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. *See also Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir.1996), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *See also JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir.1996). Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Id.* Irrelevant or unnecessary facts do not deter summary judgment—even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).

### III. STATUTORY FRAMEWORK

The Clean Air Act establishes a regulatory scheme designed "to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). To accomplish this goal, the Act requires the Administrator of the EPA to identify and prepare air quality criteria for each air pollutant, emissions of which may endanger public health or welfare, and the presence of which results from numerous or diverse mobile or stationary sources. 42 U.S.C. § 7409. Thereafter, the EPA is required to promulgate regulations establishing national ambient air quality standards ("NAAQS") specific to each air pollutant. *Id.*

To promote the NAAQS, each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant. An area that meets the NAAQS for a particular pollutant is an "attainment" area, an area that does not meet the NAAQS is a "nonattainment"

area, and an area that cannot be classified due to insufficient data is "unclassifiable." To ensure that the attainment areas continue to maintain the national standards, the Act sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in these areas. 42 U.S.C. §§ 7470–7492. The federal PSD regulations are set forth at 40 C.F.R. § 52.21.

In furtherance of the goal to prevent deterioration of the current air quality, the Act also requires the Administrator of the EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant and to promulgate regulations establishing federal standards of performance for "new sources" of air pollutants within each of these categories. 42 U.S.C. § 7411(b)(1)(A)-(B). "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to each source. 42 U.S.C. § 7411(a)(2). These standards are known as New Source Performance Standards ("NSPS") and are designed to assure that any new construction or modification of an existing structure is completed within the regulations of the Clean Air Act.

To accomplish these goals, the Act mandates that each state adopt a State Implementation Plan ("SIP") that provides for the maintenance, implementation, and enforcement of the NAAQS, such as emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality. 42 U.S.C. § 7410. Each state's SIP is enforceable by the EPA. 42 U.S.C. § 7413(a)(1). In 1972, Illinois complied with the Act and adopted its SIP. As mandated, Illinois' SIP contains a provision prohibiting the commencement of construction of a new emis-

sion source or modification of an existing source without first obtaining a construction permit. 35 IAC § 201.142.

## IV. ANALYSIS

### A. Preconstruction Permits Claims (First Claim & Portion of Third Claim)

As stated above, the Government alleges that nine modification projects constructed at Baldwin Station between 1982 and 1994 were done without obtaining preconstruction permits. In support of their motion, Defendants argue that all of the alleged violations at issue occurred more than five years before the Government filed its initial complaint and are barred by the five-year statute of limitations provided under the general federal statute of limitations, 28 U.S.C. § 2462.

In opposition, the Government concedes that the five-year statute of limitations period applies, but argues that the alleged violations are continuing in nature and toll the statute of limitations. In other words, the Government argues that each day of operation at Baldwin Station constitutes additional violations of the Clean Air Act provisions under which this suit is brought. The Court disagrees.

The Clean Air Act specifies no period during which claims of violation may be brought. Thus, the general federal statute of limitations, 28 U.S.C. § 2462, is applicable to the Act. *United States v. Murphy Oil USA, Inc.,* 143 F.Supp.2d 1054, 1080 (W.D.Wis.2001); *United States v. Westvaco Corp.,* 144 F.Supp.2d 439, 442 (D.Md.2001). Title 28 of U.S.C. § 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless

commenced within five years from the date when the claim first accrued, if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

A claim "first accrues" under § 2642 on the date that a violation first occurs. *3M Co. v. Browner,* 17 F.3d 1453, 1462 (D.C.Cir.1994). However, where a violation is ongoing, the statute of limitations is tolled for as long as the violation continues. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

The Government makes three allegations within its first claim for relief. First, the Government alleges that Defendants violated and continue to violate 42 U.S.C. § 7475(a) and § 7477 of the Act and the PSD regulations set forth by the EPA in 40 C.F.R. § 52.21 by "undertaking ... major modifications and/or operating the Baldwin Station facility after the modifications without first obtaining a PSD permit as required by 40 C.F.R. § 52.21(i)(1) and 52.21(r)(1)." Compl. ¶ 64. Second, the Government alleges that Defendants have not installed and operated the best available control technology ("BACT") for the control of nitrogen oxide ("NO$_x$"), sulfur dioxide ("SO$_2$"), and particulate matter ("PM") as required by 40 C.F.R. § 52.21(j) ("BACT violations"). Third, the Government alleges that Defendants failed and continue to fail to demonstrate that the modifications "would not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount as required by 40 C.F.R. § 52.21(k); to perform an analysis of ambient air quality in the area as required by 40 C.F.R. § 52.21(m); and, to submit to Illinois or EPA all information necessary to perform any analysis or make those determinations required under 40 C.F.R. § 52.21 as required by 40 C.F.R.

§ 52.21(n)" ("preconstruction analysis violations").

Although the latest complaint refers to Defendants' failure to obtain a permit before undertaking "major modifications and/or *operating* the Baldwin Station facility after the modifications," the specific provisions of the Clean Air Act that the Government cites Defendants with violating contain *preconstruction permit* requirements, not *operation permit* requirements. For whatever reason, the Government chose to allege a violation of the Act's preconstruction permit requirements contained in 42 U.S.C. § 7475 rather than a violation of the Act's operating permit requirements as set forth in 42 U.S.C. § 7661, *et seq.* Therefore, the only issue presented in the first claim is whether Defendants violated the Act's preconstruction permit requirements.

In contrast, the Government has alleged violations of the Illinois SIP's preconstruction permit *and* operating permit requirements under 35 IAC § 201.142 and § 201.143 in its third claim. Compl. ¶ 81. The Court will address the SIP operating permit requirements *infra* in § C.

Under the Clean Air Act, owners are required to obtain a preconstruction permit prior to commencing construction of a major modification. Section 7475, "Preconstruction requirements," provides in relevant part:

> (a) No major emitting facilities ... may be *constructed* in any area to which this part applies *unless*—
>
> > (1) a *permit* has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part; and
>
> .     .     .     .     .

(4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility.

42 U.S.C. § 7475(a) (emphasis added).

The relevant EPA regulations provide:

.No stationary source or modification to which the requirements of paragraphs (j) through (r) of this section apply shall begin actual construction without a permit which states that the stationary source or modification would meet those requirements. The Administrator has authority to issue any such permit.

. . . [A]ny owner or operator of a source or modification subject to this section who commences construction after the effective date of these regulations without applying for and receiving approval hereunder, shall be subject to appropriate enforcement action.

40 C.F.R. § 52.21(i)(1); (r)(1). 40 C.F.R. § 52.21(k);(m); and (n) require the facility owner to demonstrate that allowable emission increases from the proposed source or modification would not cause or contribute to air pollution in violation of the NAAQS.

In effort to enforce this federal scheme, the Illinois SIP provides:

No person shall cause or allow the construction of any new emission source or any new air pollution control equipment, or cause or allow the modifications or any existing emission source or air pollution control equipment, without first obtaining a construction permit from the Agency . . .

35 IAC § 201.142.

■ Because these provisions require certain limitations in emissions and application of the best available control technology before a preconstruction permit can be obtained, the Government argues that any violation of the preconstruction permit provisions is ongoing. As stated above, the Court disagrees.

Although the Seventh Circuit has not addressed this issue, every district court which has, except two,[1] has concluded that preconstruction permit violations do not constitute violations that continue past the completion of construction. *United States v. Brotech Corp.*, No. 00–2428, 2000 WL 1368023, at *3 (E.D.Pa. Sept. 19, 2000); *Westvaco Corp.*, 144 F.Supp.2d at 444; *United States v. Campbell Soup Co.*, No. S–95–1854, 1997 WL 258894, at *1–2 (E.D.Cal. March 11, 1997); *Murphy Oil*, 143 F.Supp.2d at 1084.[2]

**1.** The Court is aware of the contrary holdings contained in the *United States v. Am. Elec. Serv. Corp.*, 137 F.Supp.2d 1060 (S.D.Ohio 2001) and *United States v. Titanium Metals Corp.*, No. CV–S–98–682–HDM (RLH), slip op. (D.Nev. Sept. 16, 1998). A close review of these cases reveals, however, that these courts failed to conduct any type of in-depth review of the relevant statutes. Nevertheless, the Court follows the greater weight of authority on this issue.

**2.** The Government relies extensively on the *United States v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir.1996). In it, Marine Shale was charged with violating the Clean Air Act by operating several minor emission sources without a permit. Marine Shale argued that

"because emissions from each minor source began more than five years before the United States filed suit, § 2462 bars all minor source fines, even those occurring within five years of the filing of the complaint." *Id.* at 1357. The Fifth Circuit disagreed, stating that "[s]ection 7413(b) contemplates a fine for each day a minor source operates in violation of the law[.]" *Id.* However, as noted by the court in *Murphy Oil*, "[i]t is not clear whether the government charged Marine Shale with violating the relevant construction permit requirements or the operation permit requirements or both, a distinction that is crucial in determining the continuing nature of the violation." *Murphy Oil*, 143 F.Supp.2d at 1083.

Even without this precedence, the same result is gleaned from this Court's review of the Act itself. First, it is important to note that the Act provides separate requirements for preconstruction permits and operating permits. *See* 42 U.S.C. § 7475 (preconstruction permits) and § 7661, *et seq.* (operation permits). That itself supports treating the statute of limitations on preconstruction violations differently than on operational permit violations. Preconstruction permits have a finite existence while operational permits can be ongoing violations.

Second, the plain language of the provisions demonstrates that any preconstruction violation occurs when the actual construction is commenced, and not at some later point in time. Under 42 U.S.C. § 7475(a)(3) and (4), the operator of a modified source is required to install the best available control technology and to demonstrate that the construction or operation of the modified source will not violate certain emissions standards. However, these requirements, along with *all* of the requirements enumerated in § 7475, must be undertaken *prior* to the construction or modification of the facility. *See* § 7475(a) (providing "[n]o major emitting facilities ... may be *constructed* in any area to which this part applies *unless*" certain conditions are met) and § 7477 (providing the "administrator shall ... take such measures ... as necessary to *prevent the construction or modification* of a major emitting facility which does not conform to the requirements of this part")(emphasis added).

The same result is reached under the preconstruction permit requirement found in the federal regulations contained in 40

C.F.R. § 52.2. *United States v. Louisiana–Pacific Corp.*, 682 F.Supp. 1122, 1130 (D.Colo.1987). *See also* § 52.21(i)(1) (providing "[n]o stationary source or modification ... shall *begin actual construction* without a permit")(emphasis added).

Since nothing in the Illinois SIP preconstruction permit requirements found at 35 IAC § 201.142 mandates anything other than obtaining a construction permit from the EPA, the Court finds that a failure to comply with the Illinois SIP preconstruction permit requirements also occurs upon construction of the source of modification.

Although the Court recognizes that the underlying intent behind the Act, the EPA regulations, and the Illinois SIP is to assure continuing air quality, these provisions cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine exists or is operated. Therefore, the Court finds that a violation of the Clean Air Act's preconstruction permit requirements under 42 U.S.C. § 7475, a violation of the EPA regulations implementing the Act, or a violation of the Illinois SIP under 35 IAC § 201.142 occurs at the time of the construction or modification and is not continuing in nature.

Accordingly, Defendants' alleged failure to comply with any preconstruction permit requirements resulted, if at all, in discrete violations that were complete at the time of construction from 1982 to April, 1994. Since this case was brought in November, 1999, more than five years after the latest modification in April, 1994, the civil penalties[3] requested under the Government's first and third claims for relief for preconstruction permit violations brought under

---

**3.** Although Defendants appear to seek summary judgment with regard to the civil penalties and injunctive relief requested in the first claim for relief, nothing in the Clean Air Act

or 28 U.S.C. § 2642 precludes the Government from seeking injunctive relief beyond a five year statute of limitations. *Murphy Oil,* 143 F.Supp.2d at 1087.

the Clean Air Act, EPA regulations, and the Illinois SIP for modifications at the Baldwin Station undertaken between 1982 and 1994 are barred by the statute of limitations. As such, the Court *grants* Defendants' motion for partial summary judgment in this regard.

**B.** *NSPS Claim—Failure to Notify EPA of Construction and Failure to Conduct a Performance Test or Inform the EPA of the Test Results (Portion of Second Claim)*

In its second claim for relief, the Government alleges that Defendants violated the New Source Performance Standards ("NSPS"). The claims relevant to this motion allege that two of the nine construction projects at Baldwin Station were done without notifying the EPA of the projects before they began in violation of 40 C.F.R. § 60.7(a)(4), without conducting a performance test within the regulatory time period or informing the EPA of the test results in violation of 40 C.F.R. § 60.8, and without conducting the performance test within the methods described in 40 C.F.R. § 60.48a.[4]

■ In support of their motion for summary judgment, Defendants again argue that these alleged violations are barred by the five year statute of limitations. Likewise, the Government again argues that these are continuing violations which toll the statute of limitations. The Court agrees with Defendants.

The relevant regulations provide as follows:

40 C.F.R. § 60.7

(a) Any owner or operator subject to the provisions of this part shall furnish the Administrator written notification or, if acceptable to both the Administrator and the owner or operator of a source, electronic notification, as follows:

.    .    .    .    .

(4) A notification of any physical or operational change to an existing facility which may increase the emission rate of any air pollutant to which a standard applies, unless that change is specifically exempted under an applicable subpart or in § 60.14(e). This notice shall be postmarked 60 days or as soon as practicable *before the change* is commenced and shall include information describing the precise nature of the change, present and proposed emission control systems, productive capacity of the facility before and after the change, and the expected complete date of the change.

(Emphasis added).

40 C.F.R. § 60.8

(a) *Within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility ...*, the owner or operator of the facility shall conduct performance test(s) and furnish the Administrator a written report of the results of such performance test(s).

(Emphasis added).

For the reasons and analysis given above in § A, as well as the plain language of the relevant provisions, the Court again finds that Defendants' alleged failure to comply with the New Source Performance Standards resulted, if at all, in discrete violations that were complete at the time of construction on the two heating units in question in 1985, 1988, 1990, and 1991.

---

**4.** Defendants do not move for summary judgment with regard to the Government's remaining claims in the second claim for relief that the modifications fail to comply with the NSPS emissions requirements in violation of 40 C.F.R. § 60.42a(a). 40 C.F.R. § 60.43a(a), and 40 C.F.R. § 60.44a(a).

Since this case was brought in 1999, more than five years after the latest modification, the civil penalties requested under the Government's second claim for relief for NSPS violations are barred by the statute of limitations. As such, the Court *grants* Defendants' motion for partial summary judgment in this regard.

## C. *Illinois SIP claim—Failure to Obtain Operating Permit (Remaining Part of Third Claim)*

In the remaining part of its third claim for relief, the Government alleges that Defendants operated Units 1, 2, and 3 at Baldwin Station (upon which the nine modifications at issue were made) without applying for or obtaining operating permits for those modifications as required by the Illinois SIP, 35 IAC § 201.143. Compl. ¶ 81. In support of their motion for summary judgment, Defendants argue that it is undisputed that operating permits were in effect for all three of the units at the time of the alleged modification projects. In response, the Government concedes that Defendants had various operating permits during the time of the modifications, but argues that Defendants never obtained new or revised operating permits after the modifications were completed.

█ Upon review of the parties' submissions, there appears to be a genuine issue of material fact regarding whether the permits in effect at the time of the modifications were sufficient to cover the modifications made. Therefore, summary judgment regarding this issue is not appropriate. Accordingly, the Court *denies* Defendants' motion with regard to this portion of the third claim for relief.

## V. *CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for partial summary judgment (Doc. 338).

Specifically, the Court *grants* summary judgment with regard to the civil penalties requested under the Government's first and third claims for relief for preconstruction permit violations brought under the Clean Air Act, EPA regulations, and the Illinois SIP for modifications at the Baldwin Station undertaken between 1982 and 1994 as these claims are barred by the statute of limitations. The Court also *grants* summary judgment with regard to the civil penalties requested under a portion of the Government's second claim for relief for NSPS violations as these claim are also barred by the statute of limitations. The Court *denies* summary judgment with regard to the alleged Illinois SIP operating permit violations set forth in the third claim for relief.

The effect of this Order leaves the Government with a claim for civil penalties and injunctive relief for NSPS emissions violations under 40 C.F.R. § 60.42a(a), 40 C.F.R. § 60.43a(a), and 40 C.F.R. § 60.44a(a) as set forth in the remaining portion of the second claim for relief; a claim for civil penalties and injunctive relief for Illinois SIP operating permit violations under 35 IAC § 201.143 as set forth in the remaining portion of its third claim for relief; and claims for injunctive relief under all three claims for relief.

Accordingly, the Government is ORDERED to file an amended complaint in compliance with this Order by *March 10, 2003*. The Government shall set forth no new allegations without leave of Court. Defendants are ORDERED to answer the amended complaint 14 days thereafter. Defendants shall not amend the substance of their answers given to the previous complaint without leave of Court.

**IT IS SO ORDERED.**